MACKEY WALL PLASTER CO. v. UNITED STATES GYPSUM CO.

(District Court, D. Montana. July 25, 1917.)

No. 78.

1. LANDLORD AND TENANT ⬦92(1)—OPTIONS TO PURCHASE—SUFFICIENCY OF NOTICE.

Under a lease containing an option to purchase and requiring the lessee to give written notice of its determination not to exercise the option before a certain date, a letter written the lessor by the lessee stating that the option would expire on May 5th, that conditions were such that it would be necessary to cancel the arrangement at the expiration of the lease, that the lessee would be glad to talk over the matter with the lessor, and that it expected to give formal notice on May 5th that it did not care to purchase the property, was not a sufficient notice to relieve it from the obligation to purchase, as it was only tentative, and an unequivocal and unambiguous notice was required.

2. ESTOPPEL ⬦118—WEIGHT AND SUFFICIENCY OF EVIDENCE.

One alleging waiver and estoppel must clearly and satisfactorily prove all the necessary facts and elements, and where the evidence is in equipoise the burden is not sustained.

3. MINES AND MINERALS ⬦53—OPTIONS TO PURCHASE—NOTICE—TIME.

Under a lease of mining and other property containing an option to purchase and requiring the lessee to give written notice before May 3d of its decision not to exercise the option, a notice given on May 11th was too late, as in this state time is of the essence of options upon mining property.

4. SPECIFIC PERFORMANCE ⬦130—RELIEF TO DEFENDANT.

In a vendor's suit for specific performance, if there are incumbrances for which the vendor is responsible, purchase-money deductions can be made in the decree.

5. VENDOR AND PURCHASER ⬦78—TIME OF CONVEYANCE—TIME AS OF THE ESSENCE.

Under a lease with an option to purchase requiring the lessee to give notice before a certain date of its decision not to exercise the option, though time was of the essence of the lessee's refusal to purchase, it was not of the essence of the lessor's subsequent conveyance, and it had a reasonable time within which to convey.

6. SPECIFIC PERFORMANCE ⬦32(3)—MUTUALITY OF OBLIGATION.

Where a lease of property part of which the lessor held under a lease from a railway company contained an option to purchase and required the lessee to give notice of its determination not to purchase, which notice was not given, specific performance would not be denied for want of mutuality, though the railway company had not consented to the sale of the leasehold, since mutuality of remedy, and not of obligation, is alone required, and if plaintiff is able to perform at the time of the decree, no bad faith appearing, specific performance may be had.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. SPECIFIC PERFORMANCE ⬡⟹14—NECESSITY OF CONSENT OF THIRD PERSON.
  Where the railway lease contained the usual condition of nonassignment, there could be no specific performance without its consent, though the contract between plaintiff and defendant was silent respecting the railway company's consent, and though defendant did not require such consent, as a court of equity will not render a decree injuriously affecting parties not before it or involving a party's breach of his contract with a third party.

.In Equity.   Suit by the Mackey Wall Plaster Company against the United States Gypsum Company.   Decree for plaintiff conditionally.

  Cooper, Stephenson & Hoover, of Great Falls, Mont., for plaintiff.

  Scott, Bancroft, Martin & Stephens, of Chicago, Ill., and Norris & Hurd, of Great Falls, Mont., for defendant.

  BOURQUIN, District Judge.   Specific performance.   It appears that by indenture plaintiff leased to defendant all the former's "right, title, estate, and interest" in and to certain mining and other property, the latter in part land plaintiff enjoyed under lease from a railway company subject to the usual condition of nonassignment and forfeiture for condition broken and of which defendant had notice.

  The indenture contained an option to defendant to purchase during the term, and was twice renewed, the last renewal for one year.   As additional consideration for the last renewal, defendant agreed that, if it determined it would not exercise the option, it would timely give to plaintiff written notice "to the effect that lessee will not purchase"; neglect or failure to give such notice obligating it to purchase.   Defendant enjoyed the premises seven years, the term ending July 6, 1916.   Notice of nonpurchase could be given at any time between July 6, 1915, and May 3, 1916.

  Plaintiff alleges defendant failed to give such notice, that plaintiff offered to perform, that defendant refused performance, and plaintiff offers to do equity.   Defendant denies said failure to give notice, and pleads waiver and estoppel in respect to notice, and that plaintiff cannot convey a good title nor any in respect to the railway lease.

  April 19, 1916, defendant wrote plaintiff as follows:

  "United States Gypsum Co., 205 W. Monroe St.
                                                        "Chicago, April 19, 1916.
  "Mr. A. D. Mackey, 1224 Chestnut Street, Minneapolis, Minn.—Dear Sir:
On May 5th our option to purchase your mill property at Great Falls expires.
I am writing you in advance of that date to inform you that conditions in Montana at this time are such that it will be necessary for us to cancel our arrangement with you at the time of its expiration which is July 5th.   We have had men looking for gypsum almost constantly since our last meeting, and so far our efforts have been fruitless.   If you care to come down and talk the matter over we will be glad to have you do so.   Expect to give you formal notice on May 5th that we do not care to purchase your property.
  "Yours truly,                      · O. M. Knode, Manager Operation."

  April 28, 1916, a conference followed in defendant's office between Mackey, plaintiff's president, and Knode, defendant's vice president and manager, Nold, defendant's superintendent, present.   The evidence of this conference is as unsatisfactory as usual when oral passages sole-

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ly between interested parties are relied upon by one of them to escape the obligation of a written contract by which he is otherwise bound, the other party resisting.

Defendant's is the testimony of Knode and Nold, in substance that they told Mackey conditions were adverse, and that defendant had decided not to purchase the property; that Mackey declared he would operate the property, then asked what defendant would do if it would not purchase; that Knode responded he would favor continuing the lease, whereupon Mackey requested such proposition be put in writing and sent to him, which Knode promised. Plaintiff's is the testimony of Mackey, in substance that conditions were discussed; that Knode said that on May 4th or 5th defendant would send Mackey formal notice defendant would not purchase; that later Knode said he would favor continuing the lease; and that Mackey responded that whatever defendant decided to do to send to him at Great Falls.

May 11, 1916, Knode wrote to Mackey, somewhat elaborately reciting that on April 19th he had written Mackey defendant would not purchase, that at the conference he had advised Mackey of defendant's decision not to purchase, that he wished to say defendant is unwilling to purchase the property, and briefly concluding defendant was willing to extend lease and option for an indefinite determinable term. May 12, 1916, and before receiving said letter, Mackey wrote defendant, assuming it had elected to purchase by failure to give notice otherwise. These and later letters seem obvious efforts to create self-serving documents.

[1] The letter of April 19th is not notice to the effect the lessee would not purchase. Notice of rejection of an irrevocable offer, like notice of acceptance of an offer, must be unequivocal and unambiguous. The reason and object are the same in both, viz. so that both parties are bound or both free, or neither is, so that subsequently neither can escape obligation of the contract or impose its obligation on the other, by belated construction of doubtful language. All doubts are resolved against the writer. The said letter is inconclusive. No prudent vendor would rely upon it and dispose of the property to another. The conditions the letter referred to—the judgment of the writer—might change. Men do not always conform to future necessity. To say the writer expects to give formal notice of refusal to purchase deprives the letter of all quality of the required notice, looks to the future, and advises that the writer has reason to consider it likely such notice will be given. It appears but tentative and for negotiation prior to the vital time, the day of decision. If it be conceded that this letter and defendants' version of the conference, if proven, make out the defense of waiver and estoppel, the proof fails.

[2] He who alleges waiver and estoppel must clearly and satisfactorily prove all the necessary facts and elements. Mindful that defendant's testimony is of two witnesses and plaintiff's of but one, circumstances tend to establish at least equipoise between them. And so defendant has not sustained the burden of proof imposed upon it by its defense. It has not persuaded the court. Amongst the circumstances referred to is that the written contract requires written notice, that such notice was not given, the letter of April 19th looking to

future notice, defendant's business experience, common sense business methods, the responsibility of its witnesses, their embarrassment and defendant's liability, Knode's mistake in dates and belief May 5th, would suffice for notice, which mistake he admits (though immediately qualifiedly receding) he discovered about May 5th, when he "came to look and see," and the letter of May 11th, with its iteration and reiteration of notice as though to impress Mackey with its truth, to save the situation, to escape the contract consequent upon neglect. Mackey, too, lacked somewhat of being a satisfactory witness, but his testimony and the circumstances at least serve to defeat persuasion of waiver and estoppel, that sufficing for plaintiff's case.

[3] The letter of May 11th is too late. In this state time is of the essence of options upon mining property. The contract is perhaps novel in real estate options so far as the books disclose, but is analogous to sales on approval requiring notice of disapproval by a time limited. Notice failing, the sale is made or absolute. By mistake or neglect defendant failed to give notice. It agreed upon such contingency to purchase. No hardship is pleaded or proven, and nothing is perceived to move the discretion of a court of equity to withhold specific performance.

[4] If there are incumbrances for which plaintiff is responsible (none pointed out in a voluminous exhibit), purchase-money deductions can be made in the decree. Plaintiff's offer of performance was without its railway landlord's consent to assignment of that lease. Defendant did not base refusal to accept performance thereon, but on notice of rejection, waiver, and estoppel.

[5] Apparently when the contract was entered into both parties contemplated either that plaintiff would secure such consent or that it was unnecessary, or defendant was willing to hazard it. Time was of the essence of defendant's rejection of purchase, but not of plaintiff's subsequent conveyance. For that it had reasonable time.

[6] This is not a case, as defendant contends, of lack of mutuality in that a stranger's (the railway lessor) consent is necessary and cannot be compelled; hence, since defendant could not have specific performance, plaintiff cannot. It is the ordinary case of a contract to convey land which the vendor does not own, wherein he could not then perform his contract. If able to perform when due, or at time of decree, no bad faith appearing, specific performance may be had.

[7] Mutuality of remedy, not obligation, is alone required, and suffices if it exists at time of decree. This is now familiar law. The doctrine for which defendant contends applies where one party engages a stranger shall perform some service for the other party, and not where one party contracts to convey what he does not own or but by defective title, incidentally involving that he procure a stranger to perform a service for him, the vendor, viz. convey the property to the vendor or perfect the vendor's title, so he may perform his contract with the vendee. A contract to assign a lease involving the lessor's consent is like in principle. Cases to the contrary are believed distinguishable or lack authority in this jurisdiction. This distinction is to be noted, however: Even if the contract be silent in respect to the landlord's consent, or though the vendee does not require it, there

can be no specific performance without it; and that because a court of equity, of conscience, will not render a decree injuriously affecting parties not before it, and will not render a decree for specific performance which involves a party's breach of his contract with another. Otherwise would be the reverse of equity.

This court will not in effect decree the railway landlord must accept defendant as tenant for the term or invoke forfeiture of the lease. Nor will it by decree aid plaintiff to violate its covenant with its landlord. It is believed a landlord with right to determine its tenants can have injunction to restrain assignment of such a lease.

If within 30 days plaintiff secures the railway lessor's consent to the assignment, or a discharge of the covenant, and in all else is ready and able to perform, it shall have decree as prayed. Otherwise decree for defendant.