### FLETCHER v. MAUPIN et al.
#### No. 7900.

United States Court of Appeals for the District of Columbia.

Decided June 15, 1942.

Mr. Edmond C. Fletcher, pro se, for appellant.

Mr. Francis W. Hill, Jr., with whom Mr. Christopher B. Garnett, both of Washington, D. C., was on the brief, for appellee Maupin.

Messrs. Edward M. Curran, U. S. Attorney, and Bernard Margolius, Assistant U. S. Attorney, both of Washington, D. C., entered appearances for, but filed no brief on behalf of, appellees other than Maupin.

Before EICHER, Chief Justice, and GOLDSBOROUGH, Associate Justice, both of the District Court of the United States for the District of Columbia, and HARRY E. WATKINS, United States District Judge, all sitting by assignment.

EICHER, Chief Justice.

This is an action to establish an equitable lien on a fund in the Treasury of the United States. Appellee Maupin was part owner of a farm near the City of Portsmouth in Norfolk County, Virginia, known as the "Afton Farm" when on September 20, 1918, the property was taken for public use by the Secretary of Labor of the United States to provide housing accommodations for workers in the Portsmouth (Va.) Navy Yard. At the time of the taking the sum of $45,047.59 was paid to the owners. Later, the Court of Claims, in a just compensation proceeding, found the value of the property, as of the date of the taking, to be $97,325.02. The unpaid balance of $52,277.43 was received by the owners on June 18, 1922. The Supreme Court of the United States in Seaboard Airline R. Co. v. United States, 1923, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664, held that the amount of just compensation for private property taken for public use should include interest from the date of the taking to the time of payment. Influenced, no doubt, by said decision, Congress, by a special Act approved June 30, 1938, directed the Court of Claims to reopen the "Afton Farm" case (and others), with the result that the Court of Claims found the interest on $52,277.43 from September 20, 1918 to June 18, 1922, to be $19,828.71 and that the share of appellee Maupin therein was $11,330.68. By Act of Congress, approved August 9, 1939, appropriation was made for the payment thereof. The appellant brought the suit out of which this appeal arises, on August 29, 1939, and Maupin's said share is now in the custody and control of defendants Morgenthau and Julian, in the District of Columbia, awaiting termination of this litigation.

The appellant's claim that he holds an equitable lien on said fund is bottomed upon a quitclaim deed to the "Afton Farm" from appellee Maupin and his wife executed and delivered to the appellant on October 9, 1930, conveying such interest as grantor "may now have", and containing the proviso that "no warranty of title is given". The consideration for the quitclaim deed was Ten Dollars and a promissory note of same date signed by the appellant promising to pay appellee Maupin, or order, on or before March 1, 1935, the principal sum of Nine Thousand Dollars, without interest, out of the rents and profits derived from the "Afton Farm". A Deed of Trust was executed on the same date by the appellant (a single man) to secure the payment of his note to appellee Maupin, which Deed of Trust conveyed all the right, title and interest in the "Afton Farm"

that was conveyed by the quitclaim deed from appellee Maupin to the appellant, and nothing more.

In the taking of the "Afton Farm" the Secretary of Labor acted pursuant to an Executive Order of the President of the United States of date June 18, 1918, which directed the Secretary of Labor to exercise all the powers vested in the President by two Acts of Congress, (1) an Act approved May 16, 1918, Ch. 74, 40 Stat. 550, authorizing the President, inter alia, to requisition lands to provide housing for war needs and to make just compensation therefor with right in property owners to have the compensation reviewed by the Court of Claims, (the powers to terminate at the close of the War, except the power to "care for, sell, or rent property undisposed of, and to conclude and execute contracts for the sale of property made during the War" and (2) an Act approved June 4, 1918, C. 92, 40 Stat. 595, 40 U.S.C.A. § 11, conferring upon the President the discretion to create a corporation for the purpose of effectuating his authority to provide housing.

On September 6th, 1918, the Acting Secretary of Labor executed an instrument requisitioning the "Afton Farm", giving notice to all interested parties, and appointing a requisition officer "to enter upon and take actual possession" of the land, and the instrument was duly recorded on September 24, 1918, in Norfolk County, Virginia.

By Executive Order of date October 29, 1918, the President approved the Act of the Secretary of Labor in causing the creation of a corporation under the laws of the State of New York, known as the United States Housing Corporation, for the purpose of carrying out the Housing Act.

On July 23, 1919, the Secretary of Labor in the name of the United States, executed and delivered a deed conveying the "Afton Farm" to the United States Housing Corporation, which deed was duly recorded in Norfolk County, Virginia, on January 30, 1923.

Appellee Maupin and his wife executed, under date of April 1, 1924, a quitclaim deed conveying the "Afton Farm" to the United States Housing Corporation, which deed was acknowledged on April 21, 1925 and on April 22, 1925 was duly recorded in Norfolk County, Virginia.

It will thus be seen that prior to execution by him of quitclaim deed to appellant in 1930, the appellee Maupin had surrendered possession of the land, had accepted his aliquot part of the amount determined by the Court of Claims to be full, just compensation, and had quitclaimed whatever interest he might have in the land to the United States Housing Corporation.

No payment having been made by appellant on the obligation to appellee Maupin secured by his Deed of Trust covering said "Afton Farm", appellee Maupin, on or about September 5, 1939, gave notice of such default to the Trustee thereunder, and on September 12, 1939, the Trustee foreclosed the same in accordance with the controlling Virginia law. The rights and interests conveyed in said Deed of Trust by appellant to the Trustee were purchased at said foreclosure sale by appellee Maupin and were conveyed to him by the Trustee.

Appellant in his complaint prayed that the Secretary of the Treasury and the Treasurer of the United States be restrained from paying the fund to appellee Maupin, that a receiver be appointed to receive the fund and receipt for same, and that appellant be decreed to have an equitable lien thereon. Appellee Maupin in his answer pleaded the taking, alleged his quitclaim deed to the United States Housing Corporation, denied any indebtedness to the appellant, and counterclaimed for the unpaid $9,000.00 with interest from March 1, 1935, represented by the note which was secured by the foreclosed mortgage given by appellant to appellee Maupin. Appellant in his reply raised no issue as to appellee Maupin's quitclaim deed to the United States Housing Corporation, (although when same was offered in evidence he objected on ground that the United States had no authority to accept such deed in 1924), denied that his note to appellee Maupin's trustee evidenced a debt or ever became an effective contract between the parties, and counterclaimed for $50,000.00 for alleged fraudulent foreclosure by appellee Maupin of the mortgage that appellant had given back on said land.

The appellant contends in argument that the United States has no right to requisition property, that there is no such thing as requisition of property, that in any event the requisite steps were not taken, and that therefore the United States did

not, on September 20, 1918, obtain, nor has it yet obtained title to the "Afton Farm"; that appellee Maupin did have title to and an interest in the lands when he executed his quitclaim deed to the appellant, and that in any event, appellee Maupin is estopped from denying that he had such title or interest; that the foreclosure of appellant's mortgage to appellee Maupin was void and ineffective because it did not secure a debt, and in any event was barred by the statute of limitations, and that if the foreclosure was effective he is entitled to relief on his counterclaim for fraudulent foreclosure; and that "the money now in the Treasury of the United States is *not* due on the just compensation on account of the taking in 1918, because the government merely went into possession without first instituting condemnation proceedings, but is due from the United States on account of such proceedings even if it be interest money as a part of just compensation".

It is appellee Maupin's contention in argument that appellant took nothing by the quitclaim deed to him; that the money due from the United States is for interest, which is personal property and was not transferred by the quitclaim deed; that the Government has not taken any rights or interest of appellant; and that if the right to the fund passed to appellant by reason of the quitclaim deed, he conveyed it to the trustee and the trustee has conveyed it to appellee Maupin.

At the threshold of decision we encounter the question whether the requisition proceedings whereby the land was taken and just compensation determined and paid, were authorized, valid, and binding upon the parties. Our answer is in the affirmative.

Appellant plays on words when he insists so strongly both in written and oral argument that there is no such thing as "requisitioning" private property for public use, and that action under authority to requisition is limited to the mere making of a request. Webster's International Dictionary defines the verb as meaning "to make an authoritative demand for, especially for military purposes."

■ The power to requisition private property for war purposes is an essential attribute of sovereignty. 67 C.J., 373. Although broader than the peace-time power of eminent domain in that it is not subject to the constitutional inhibition against taking property without compensation, its exercise implies a contract to reimburse the owner. 20 C.J., p. 517, footnote 25; 29 C.J.S., Eminent Domain, § 5, footnote 36.

■ However, the action of the President and delegated officials in this case did not rest on his inherent authority as Commander-in-Chief under the laws of War to take property directly needed for the prosecution of the War, but was fortified by Congressional enactment, designating the method for determination and payment of just compensation and extending his authority to other property needed or useful in connection with the War. See 67 C.J., p. 374. We hold that the procedure followed by the Government was in full compliance with law, and that the taking was and is valid and binding upon appellee Maupin and all persons claiming by, through or under him. International Paper Company v. United States, 282 U.S. 399, 51 S.Ct. 176, 75 L.Ed. 410; United States v. Stein, D.C., 48 F.2d 626; Richmond Fairfield R. Co. v. Llewellyn, 156 Va. 258, 157 S.E. 809; United States v. 243.22 Acres of Land et al., D.C., 43 F.Supp. 561; and Manufacturers' Land, etc., Co. v. United States Shipping Board etc. Corp., 264 U.S. 250, 44 S.Ct. 314, 68 L.Ed. 664.

It follows that nothing passed to appellant by his quitclaim deed from appellee Maupin, and we might well affirm the decision of the Court below at this point without further discussion. However, we deem it appropriate to review briefly the several collateral contentions argued by the appellant.

■ He insists that appellee Maupin still did have title to the lands when he executed the quitclaim deed to appellant and that the deed estops said appellee from denying such title. Even if this were so, it would be of no avail to the appellant. In 29 C.J.S., Eminent Domain, § 202, p. 1115, the rule is stated as follows:

"Damages for the taking of land or for the injury to land not taken belong to the one who owns the land at the time of the taking or injury, and they do not pass to a subsequent grantee of the land, except by a provision to that effect in the deed or by separate assignment."

■ The fund in controversy here represents interest accruing between 1918 and 1922 on a part of the just compensation

for the land of which the government took possession in 1918. By no stretch can it be classed as damages accruing after appellant got his quitclaim deed in 1930. Only if it could be so classed would the authorities cited by appellant on this phase of the case become in any degree applicable. And under facts such as we have at bar it is immaterial whether the deed under which grantee claims is a warranty or a quitclaim deed. Roberts v. Northern Pacific R. Co., 158 U.S. 1, 15 S.Ct. 756, 39 L.Ed. 873. Speaking directly to the effect of a quitclaim deed, the Supreme Court of New York, Appellate Division, in the case of In re Rochester Avenue in City of New York, 241 App.Div. 614, 268 N.Y.S. 736, 738, said:

"As to damage parcel No. 23, appellants have not proven ownership of the award; there was no assignment of the award to them. Though the quitclaim deed given them purported to convey, not only the portion of the premises owned by the grantors, but also the portion previously acquired by the city, and although the deed contained the usual appurtenance clause, this is not sufficient to indicate an intention on the part of the grantors to assign the award for that part of the premises taken."

It is clear that appellant accepted his quitclaim deed with knowledge, either actual or constructive, that appellee Maupin had acquiesced in the taking of possession by the government, had accepted the several payments of compensation, and had executed a quitclaim deed covering the same property to the United States Housing Corporation in 1924. If any estoppel arises it is across appellant's path and not appellee Maupin's.

██ We doubt whether serious discussion is called for as to the effect of the foreclosure sale in 1939 under the Deed of Trust executed by appellant contemporaneously with his receipt of quitclaim deed from appellee in 1930. Whatever significance may attach to that element of the reciprocal transaction between appellant and appellee Maupin, it operates adversely to the contentions of appellant. In oral argument appellant admitted knowledge, at the time he signed the note and deed of trust, of a possible claim against the United States for interest on the already paid compensation. And yet no mention, direct or indirect, is made in the note or deed of trust

of any unsatisfied claims for interest on the principal compensation received for the land quitclaimed to the appellant. "Rents and profits" *only* are mentioned, indicating conclusively the appellant's recognition that his sole "hope of reward" lay in nullifying the original taking by the Government. No more need be said on that subject.

██ Finally, the appellant makes the contradictory point that the money in controversy is *not* due as part of just compensation for the original taking, but that it *is* due from the United States "on account of such proceedings" even if it be interest money as a part of government compensation; this because the government merely went into possession without first instituting condemnation proceedings. We need only repeat our conclusion that the requisition procedure resorted to was just as valid as would have been appropriate condemnation procedure. Hence, appellant's claimed right, whether legal or equitable, to the money in controversy is, under the adopted mechanics, similarly non-existent.

We are of the opinion that the Court below reached the correct result and its judgment is accordingly affirmed.