### LESTER et al. v. G. L. TARLTON CON-TRACTOR, Inc., et al. MANESS v. SAME.

#### Nos. 169, 170.

District Court, W. D. Missouri, S. D.

July 11, 1942.

REEVES, District Judge.

Suits by the several plaintiffs were filed against the contractors who were acting for the government and under the immediate supervision of the War Department in providing and constructing facilities for military training purposes at Camp Crowder, near Neosho, Missouri.

The complaint in No. 170 is in two counts. By the first count it is averred that the defendants wrongfully entered into and upon plaintiff's real estate and forcibly deprived the plaintiff of the use thereof, and that at the present time the defendants are withholding said property from the plaintiff. The second count in substance charges that the property is not only being withheld from plaintiff, but that it is being injured and that the operations of the defendants are such as to cause physical injuries to the plaintiff and members of his family.

The complaint in No. 169 is that the defendants have wrongfully entered upon a leasehold estate owned and improved by the plaintiffs and that by the conduct and operations of the defendants such leasehold has been injured and rendered uninhabitable by the plaintiffs. On the ground that the invasion of their leasehold was wanton and willful and for the injuries alleged to have accrued to them, these plaintiffs also seek heavy damages.

The cases were removed to this court upon the ground that the defendants were acting for and on behalf of the United States Government and under its supervision in the construction of facilities for military training and other military purposes. It is asserted, moreover, that the identical properties claimed by the several plaintiffs have been appropriated by the government under the right of eminent domain and that by reason of the operations of the government on the lands involved federal questions arise and that by reason thereof the cases are removable.

■ 1. While the complaints in the several cases do not specifically set forth matters from which federal questions would ordinarily arise, yet the court must take judicial notice of the fact that declarations of taking have been filed on the identical properties involved in these controversies. Moreover, the court will take judicial notice of the existence, operations and purposes of Camp Crowder. Notice will also be taken of the extraordinary emergency

Leo H. Johnson and Ruark & Ruark, all of Neosho, Mo., for plaintiff in No. 169.

Herbert H. Douglas and Ruark & Ruark, all of Neosho, Mo., for plaintiff in No. 170.

Richard M. Musser and Earl A. Grimes, U. S. Attys., both of Kansas City, Mo., for defendant in both cases.

now existing wherein the government is struggling to maintain its own existence and that the national authorities are now engaged in marshaling all military forces, including both manpower and matériel. Moreover, the court will notice the law whereby the government may begin its essential operations upon property even before the title has been acquired by a proper condemnation.

See Matter of Dunn, 212 U.S. 374, loc. cit. 386, 29 S.Ct. 299, 53 L.Ed. 558.

2. Clause 11, Section 8, Article I of the Constitution of the United States empowers the Congress to declare war, and subsequent clauses enable the government, through its Congress, to raise and support armies and to exercise its authority in enacting such laws as may be necessary and proper for carrying into execution such powers, "and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

■ It is useless to discuss that provision of the Constitution which enables the government to appropriate property for its own use. It was well said in James v. Dravo Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 215, 82 L.Ed. 155, 114 A.L.R. 318, that: "The right of eminent domain inheres in the federal government by virtue of its sovereignty, and thus it may, regardless of the wishes either of the owners or of the states, acquire the lands which it needs within their borders."

■ It follows that the government possessed the inherent power, through its proper officers, to seize the properties in question.

■ 3. The government can only act through its agents. Although the defendants were engaged by the government to construct facilities for its military purposes, yet, in entering upon the land and in engaging in the work contracted to be done by them, they were necessarily working for and on behalf of the government. It was the government, in the exercise of its authority, that caused them to go upon the lands in question and begin their work. Since the government was engaged in pursuing a great national purpose in the midst of a great national emergency, neither the state law nor any individual could interfere with or thwart that purpose.

■ As stated in Stewart & Co. v. Sadrakula, 309 U.S. 94, loc. cit. 103, 60 S. Ct. 431, loc. cit. 436, 84 L.Ed. 596, 127 A. L.R. 821: "But the authority of state laws or their administration may not interfere with the carrying out of a national purpose." Continuing, the court said: "Where enforcement of the state law would handicap efforts to carry out the plans of the United States, the state enactment must, of course, give way."

■ With equal precision it may be said that if the substantive rights of the individual vouchsafed to him by the state law should in any way interfere with the government's operations, the rights of the individual must fall in the presence of the superior right of the whole people where their safety and happiness are as critically involved as now.

■ Adverting to the rights of the defendants, it was held in Pittman v. Home Owners' Loan Corp., 308 U.S. 21, loc. cit. 32, 60 S.Ct. 15, loc. cit. 18, 84 L.Ed. 11, 124 A.L.R. 1263, that: "Congress has not only the power to create a corporation to facilitate the performance of governmental functions, but has the power to protect the operations thus validly authorized. 'A power to create implies a power to preserve.'"

■ By analogy of reasoning, the government not only has the power to contract with individuals and corporations to provide facilities for governmental and especially military functions, but it follows, as the day the night, that it has the power to protect the operations thus validly authorized.

It was the government directing the operations about which the plaintiffs complain. The case is very similar to that of Steele v. Halligan, D.C., 229 F. 1011, where a prisoner sued the warden of the penitentiary for alleged negligence in work assigned to and required of the prisoner. It was pointed out in that case that the prisoner was engaged in work authorized and directed by the government and that while the government was carrying out its own operations questions presented necessarily arose under federal law and that, in consequence, the case was removable.

A case bearing a close analogy to the facts in this case was that of United States v. Lee (Kaufman v. Lee), 106 U.S. 196, loc. cit. 222, 1 S.Ct. 240, loc. cit. 262, 27 L.Ed. 171.

■ A controversy arose between private litigants over land acquired by the

government. The government became interested in the controversy because its title depended upon the rights of the litigants. A question arose as to whether or not the federal court had jurisdiction, and on that question the court said: "If it be said that the proposition here established may subject the property, the officers of the United States, and the performance of their indispensable functions to hostile proceedings in the state courts, the answer is that no case can arise in a state court where the interests, the property, the rights, or the authority of the federal government may come in question, which cannot be removed into a court of the United States under existing laws. In all cases, therefore, where such questions can arise, they are to be decided, at the option of the parties representing the United States, in courts which are the creation of the Federal government."

A case bearing a striking resemblance to this case was that of Whiffin v. Cole, D.C., 264 F. 252, 253. The project manager in a government activity was sued in a state court but, because "of the relation of the government to such a project and the administrative status of the manager, a federal question is presumed to be involved; * * *:" The motion to remand was overruled. The same order should be made in these cases.