**VIETZKE v. AUSTIN CO.**
Civil Action No. 147.

District Court, E. D. Washington, S. D.
Feb. 23, 1944.

E. K. Brown, of Ellensburg, Wash., and M. M. Moulton, of Kennewick, Wash., for plaintiff.

Holman, Sprague & Allen and Charles I. Stone, all of Seattle, Wash., and Cameron Sherwood, of Walla Walla, Wash., for defendant.

SCHWELLENBACH, District Judge.

This is an action for the conversion of two trucks. The plaintiff owned the trucks and in April, 1942, leased them to defendant for use by the defendant on a project which it was constructing under contract with the United States Navy at Pasco, Washington. The defendant contends that it, as an agent for the Navy, had an option to purchase the trucks and that it exercised that option on July 27, 1942. It had paid the rent up to July 1, 1942, prior to the commencement of this action and has deposited the rent from July 1 to July 27 with the Clerk of the Court. At the conclusion of the trial, I discussed the testimony in detail and made a finding of fact that there had been no option agreement. A reading of the transcript of the testimony which defendant has furnished me has strengthened my belief as to the correctness of that conclusion. I have no doubt that the plaintiff never agreed to option his trucks and that whenever defendant contended that he had optioned them, he protested. The testimony of plaintiff and his witnesses on this point is clear and convincing, while that of the defendant's witnesses is not convincing.

Defendant contends that it merely acted as an agent for the United States Navy and that its seizure of these two trucks was an exercise of a power to requisition private property for war purposes essentially inherent in the sovereign. See: 67 C.J. 373. It contends that since it was the mere agent of the United States, that the United States is the real and indispensable party in interest and that, therefore, it is immune from suit. In support thereof it relies on Fletcher v. Maupin, 76 U.S.App.D.C. 63, 129 F.2d 46, and Yearsley v. W. A. Ross Construction Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554, and Lester v. G. L. Tarlton Contractor, Inc., D.C., 45 F.Supp. 994, 995. I entertain grave doubts as to the right of the Government to farm out its requisitioning power to a private individual or corporation. The breadth of the implications of evil possibly involved by such an exten-

sion of the doctrine is almost limitless. I think I have a full comprehension of the necessities implicit in our present task of winning the war. I find it difficult, however, to believe that such necessities encompass the need to sanction the wholesale delegation of war powers by even junior military and naval officers to such individuals and corporations as may be deemed convenient. Fortunately, it is not necessary to reach this point in order to decide this case. As Chief Justice Marshall said in United States v. Peters, 9 U.S. 115, 139, 5 Cranch 115, 139, 3 L.Ed. 53: " * * * it certainly can never be alleged, that a mere suggestion of title in a state, to property in possession of an individual, must arrest the proceedings of the court and prevent their looking into the suggestion, and examining the validity of the title." Mr. Justice Miller, in United States v. Lee, 106 U.S. 196, 221, 1 S.Ct. 240, 261, 27 L.Ed. 171, in the celebrated case involving the Lee House in Arlington Cemetery, had this to say on the subject: "It cannot be, then, that when in a suit between two citizens for the ownership of real estate, one of them has established his right to the possession of the property according to all the forms of judicial procedure, and by the verdict of a jury and the judgment of the court, the wrongful possessor can say successfully to the court, 'Stop, here; I hold by order of the President, and the progress of justice must be stayed.' That, though the nature of the controversy is one peculiarly appropriate to the judicial function, though the United States is no party to the suit, though one of the three great branches of the government to which by the constitution this duty has been assigned has declared its judgment after a fair trial, the unsuccessful party can interpose an absolute veto upon that judgment by the production of an order of the secretary of war, which that officer had no more authority to make than the humblest private citizen." The dividing line between cases in which officers or agents of the Government can claim immunity in litigation is pointed out by the Supreme Court in Yearsley v. W. A. Ross Construction Company, supra, 309 U.S. at page 21, 60 S.Ct. at page 414, 84 L.Ed. 554, as follows: "Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was

not validly conferred." This is the same doctrine which the Supreme Court accepted in Ickes v. Fox, 300 U.S. 82, 97, 57 S.Ct. 412, 418, 81 L.Ed. 525, when it quoted with approval the following language from Philadelphia Co. v. Stimson, 223 U.S. 605, 619, 32 S.Ct. 340, 344, 56 L.Ed. 570: "The exemption of the United States from suit does not protect its officers from personal liability to persons whose rights of property they have wrongfully invaded. * * * And in case of an injury threatened by this illegal action, the officer cannot claim immunity from injunction process." Similar holdings by the Supreme Court are Noble v. Union River Logging R. Co., 147 U.S. 165, 171, 13 S.Ct. 271, 37 L.Ed. 123; Tindal v. Wesley, 167 U.S. 204, 221, 17 S.Ct. 770, 42 L.Ed. 137; Payne v. Central Pacific Ry. Co., 255 U.S. 228, 238, 41 S.Ct. 314, 65 L.Ed. 598; Goltra v. Weeks, 271 U.S. 536, 544, 46 S. Ct. 613, 70 L.Ed. 1074.

■ Clearly, an agent of the Government whose power stems exclusively from a contract occupies no higher position than does a duly appointed and constituted officer of the Government. If a cabinet officer is not immune, this defendant can not claim the protection of the cloak of immunity. I can find nothing of benefit to the defendant in the three cases on which it relies. Fletcher v. Maupin, supra, and Yearsley v. W. A. Ross Construction Co., supra, both involve legal acts within the scope of the authorization. All that Lester v. G. L. Tarlton Contractor, Inc., supra, holds is that when a party claims immunity as a government agent, he is entitled to assert that immunity in a Federal court.

■ That defendant's seizure of plaintiff's trucks was illegal and unauthorized by the Navy can not be doubted. In support of its position, defendant called A. F. Ghiglione, Lieutenant Commander and Resident Officer in charge of defendant's naval contracts. In presenting this witness, counsel for defendant made the following statement: "However, this is a type of contract, cost plus fixed fee, that was used at that time and it is very flexible and provides for a large degree of discretion and control by the resident officer in charge, and what I am attempting to get now is a statement from the resident officer in charge of some act in his behalf as to what was the direction to the Austin Company under 4210." The Commander testified as follows:

"Q. In other words, you have never attempted to hold or to obtain equipment unless it was on the basis of what you understood to be an agreement—A. That is right

"Q. —which had been,—a contract which had been agreed to by the third party from whom the equipment was being obtained? A. That is right

"Q. (By the Court) Have you ever authorized the Austin Company to take property? A. No, sir.

"Q. (By the Court) Except under a claimed option? A. No, sir

*     *     *     *     *

"Q. (By the Court) What would be the policy of the Navy, Commander, if the Austin Company would go without any authority, without any agreement, or contrary to an agreement, and take property; would the Navy approve of such a taking and assume responsibility for the payment of it? A. No, sir, we would not. I can think of no cases we would have arising in that respect. And we audit all payments. And we would deduct it from subsequent vouchers if we did pay for such an act,—that is, to the Austin Company.

"Q. (By the Court) If you found out afterwards that it had not been taken in conformity with your prescribed procedure, even though you have ratified it by paying it—A. We would later deduct it from a subsequent payment, yes.

"Q. (By the Court) And would repudiate the ratification? A. Yes, sir.

The Commander later testified that under such an assumed set of facts he had the authority to repudiate the ratification without consultation with the Bureau of Yards and Docks at Washington.

■ Under these circumstances, the defense that defendant was acting on behalf of the Navy necessarily falls. Since the defendant had no option agreement with the plaintiff, what was done was unauthorized and necessarily illegal. It comes directly within the rule laid down in the many Supreme Court decisions to which I have adverted.

■ Defendant contends that plaintiff is estopped to assert that he had not optioned these trucks. This is based upon the theory that at some time in June, 1942, he understood from a conversation with one Mendenhall, who was equipment clerk for defendant on the Pasco job, that the defendant

claimed an option and that by accepting rental thereafter his mouth is closed to assert that no option existed. I will not stop to consider the question of defendant's right to assert this defense without pleading it. This defense does not find support either in the testimony or the law. Plaintiff's testimony concerning the Mendenhall conversation included the following:

"Q. But in any event, you were advised that the option was to be exercised to take over your equipment by either The Austin Company or the Navy? A. I was advised they were going to take it over, yes.

"Q. And at that time did you do anything to forestall that in any way? A. I did. I told them I didn't see how they could do it. I hadn't signed no contract and they seemed pretty much surprised that the contract was not signed, and they told me, they went right in the office and called Seattle to find out what to do about it, and then they came back and wanted to know why I didn't sign it,—hadn't signed it and sent it back, and then it seems like they went in and called Seattle again and Seattle didn't know just what to do about it, and they said to go ahead as they had been and, "We will see what comes of it."

A careful examination of the witness Mendenhall's testimony reveals that he did not controvert this contention. The only time that he did controvert it was in answer to leading questions which I struck from the record. After that was done, defendant's counsel asked this question:

"Q. Did you have any conversation with Mr. Vietzke in regard to these two trucks or anything to do with this transaction? A. No."

On cross examination, his testimony was:

"Q. Did he ever admit to your having given an option? A. Not saying that in so many words but if I may—

"Q. You just inferred it or the inference was by you."

■■ The Supreme Court of Washington, in Elmonte Investment Company v. Schafer Bros. Logging Co., 192 Wash. 1, 31, 72 P.2d 311, 324, adopted with approval the generally recognized requirements prerequisite to an estoppel outlined in 21 C.J. 1119, as follows: "In order to constitute this kind of estoppel there must exist a false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied * * * upon it to his prejudice. * * * There can be no estoppel if either of these elements are wanting. They are each of equal importance." See, also, 31 C.J.S., Estoppel, § 67. The doctrine has been confirmed later in Consolidated Freight Lines, Inc., v. Groenen, 10 Wash.2d 672, 677, 117 P.2d 966, 137 A.L.R. 1072; and Bellingham Securities Syndicate, Inc., v. Bellingham Coal Mines, Inc., 13 Wash.2d 370, 386, 125 P.2d 668. The Circuit Court of Appeals for the Ninth Circuit, in Van Antwerp v. United States, 92 F.2d 871, 875, said this concerning the doctrine of estoppel: "The burden of proving every essential element of an estoppel is upon the party seeking to set up an estoppel. Hanneman v. Richter, C.C., 177 F. 563, 566; Merrill v. Tobin, C.C., 30 F. 738, 743; Mackey Wall Plaster Co. v. United States Gypsum Co., D.C., 244 F. 275, 277; Hull v. Commissioner, 4 Cir., 87 F.2d 260, 262; Commissioner v. Union Pacific R. Co., 2 Cir., 86 F.2d 637, 640. These essential elements of estoppel, each of which the government must prove in this case, are * * *: 'To constitute estoppel (1) there must be false representation or wrongful misleading silence. (2) The error must originate in a statement of fact and not in an opinion or a statement of law. (3) The person claiming the benefits of estoppel must be ignorant of the true facts, and (4) be adversely affected by the acts or statements of the persons against whom an estoppel is claimed.'" Judged by these standards, the doctrine is not available as a defense in this case.

■ The entry of a judgment in plaintiff's favor makes necessary the fixing of the value of plaintiff's trucks. This is a task pregnant with difficulties. Plaintiff's testimony is that the large one was worth $2,000 and the smaller one, $1,750. Defendant's testimony is that they were worth not more than $1,000 apiece. A large amount of testimony was admitted concerning the value of the various parts of the trucks. It was almost impossible to fix a market value of trucks during the summer of 1942. This for the reason that the sudden demand for trucks resulting from the multitude of government projects started after the outbreak of war, coupled

with the uncertainty due to lack of knowledge as to how long such projects would last, meant complete instability in truck market value. . That doesn't mean that plaintiff is not entitled to recover. Layman v. Swanson, 3 Wash.2d 370, 377, 101 P.2d 304; Junkin v. Anderson, 12 Wash. 2d 58, 64, 120 P.2d 548, 123 P.2d 759. In my opinion, the facts justify me in accepting as the value the fifteen hundred dollars agreed upon between the parties during the negotiations in this transaction. It is true the parties disagreed as to the purpose of that valuation. Plaintiff contends and I have found with him that such valuation was fixed for use in the event of the destruction of the trucks during the term of the rental agreement. Defendant contends that this fixing was for option purposes. The purpose for which the value was fixed is immaterial. The parties did agree, at the time of this transaction, that the trucks were worth $1,500 apiece and I will hold that that is the value for which plaintiff is entitled to recover.

■ In addition to the judgment for the value of the property, plaintiff seeks to recover for loss of use either at the rate of $1,000 per month or as interest at the rate of 6 per cent per annum. Since there is a dispute as to the value of the trucks and the value cannot be ascertained by mere computation nor by reference to some reasonably certain standard, the damages are unliquidated and interest will be allowed only from the date of the judgment. B. & B. Building Material Company, Incorporated, v. Winston Brothers Company, 158 Wash. 130, 136, 290 P. 839. Plaintiff is entitled to recover damages for loss of profits of which he was deprived by defendant's conversion to the extent that his testimony concerning such profits is sufficiently definite to enable the court to arrive at a definite amount. Layman v. Swanson, 3 Wash.2d 370, 379, 101 P.2d 304. See: 8 R.C.L. 501, sec. 62; 26 R.C.L. 1148, sec. 63; 15 Am.Jur. 571, sec. 155. Plaintiff is not entitled to recover prospective profits which are speculative, uncertain and conjectural. Webster v. Beau, 77 Wash. 444, 137 P. 1013, 51 L.R.A.,N.S., 81. "The assessment of damages for the unlawful taking and detention of personal property calls for [some] discretion on the part of the trier of the facts." MacKenzie v. Steeves, 98 Wash. 17, 25, 167 P. 50, 53. Plaintiff's right to recover for loss of use is limited to the time within which, by the exercise of diligence, he might have purchased other trucks in place of those converted. Layman v. Swanson, supra, 3 Wash.2d at page 380, 101 P.2d 304. Neither party submitted evidence to assist the court in the determination of what was a reasonable time within which plaintiff could have purchased other trucks. However, during trial defendant's counsel conceded plaintiff's right to recover for loss of use up to October 1, 1942 (Tr. pp. 41, 42). Since the plaintiff offered no proof on this point and defendant made this concession, the allowance must be based upon the testimony as to profits reasonably certain of ascertainment between July 28, 1942, and October 1, 1942. On this point, plaintiff's proof shows that he had a contract to haul corn, that he actually hired two other trucks in place of these which defendant had taken, and that, if these trucks had been available to him, he could have made a profit of at least $1,100 on each truck during the thirty-three days after August 23, 1942 (Tr. p. 82). This testimony is sufficient upon which to base an allowance under this cause of action. All other testimony submitted by plaintiff on this point is too speculative and conjectural. I will allow $2,200 on this cause of action.

Judgment may be entered in accordance with this opinion.