**UNITED STATES v. STEIN.**

No. 513.

District Court, N. D. Ohio, E. D.
July 13, 1921.

E. S. Wertz, U. S. Atty., of Cleveland, Ohio, for plaintiff.

E. H. Moore, of Cleveland, Ohio, and I. G. Mathews, of Youngstown, Ohio, for defendant.

WESTENHAVER, District Judge.

The bill in this case is, in substance, one to quiet plaintiff's title against adverse claims of the defendant, and more particularly, to enjoin the defendant from repeated acts of malicious trespass and interference with plaintiff's possession and with its employees and its tenants thereon. Defendant, notwithstanding the general denial of its answer, did not, on this hearing, dispute the allegations of interference and trespass, but, on the contrary, announced its purpose to continue the same in the event the preliminary injunction heretofore granted was dissolved. No point was made on the hearing or is made in the brief of the defendant, going to the jurisdiction of this court. Both parties have argued and presented to the court the single question of the superior title of the plaintiff to the property described in the bill and the superior right to possession thereof. This question alone will therefore be considered and decided.

Plaintiff's title depends on certain proceedings said to have been taken under an Act of Congress approved May 16, 1918, entitled, "An Act to authorize the President to provide housing for war needs." 40 Stat. 550. This act, among other things, authorizes the President of the United States, in order to provide housing for industrial workers engaged in industries connected with and essential to the national defense, to purchase, lease, requisition, or acquire by condemnation or by gift, any improved or unimproved land, or any right, title, or interest therein on which such houses, buildings, improvements, and parts thereof have been or may be constructed. The only litigation on this power of purchase or requisition now material to be considered is that no occupied dwelling or place of abode shall be acquired except by contract, unless the necessity therefor shall first be determined by a judge of the Circuit or District Court of the United States exercising jurisdiction in the locality where the land is situated. Power is also given to construct such houses and buildings as the President may determine to be necessary for the proper conduct of the existing war. He is also authorized and required to make just compensation therefor, to be determined by him. If the amount of the compensation thus determined is unsatisfactory to the person entitled to receive the same, such person shall be paid 75 per cent. of the amount so determined and shall be entitled to sue the United States to recover such further sum as added to the 75 per cent. will make up such amount as will be just compensation therefor. This suit may be brought and conducted as is provided by section 24, par. 20, and section 145 of the Judicial Code, 28 USCA §§ 41(20), 250. An appropriation of $60,000,000 is made by the act to enable the President to make just compensation to persons whose land is thus acquired, requisitioned, or condemned. Section 5 provides, in substance, that the power and authority granted by the act shall cease with the termination of the present war, except that the power and authority to care for, sell, or rent such property, as remained undisposed of, shall continue thereafter, and that all such property shall be sold as soon after the conclusion of the war as it can advantageously be done. It is further provided that, before any sales are consummated, the same must be authorized by Congress.

The President, by another act, approved June 4, 1918 (40 Stat. 595) is authorized, if in his judgment such action is deemed necessary or advantageous, to create a corporation for the purpose of carrying out the provisions of the act first cited. It was under this act that the United States Housing Corporation was created. The President is also by both acts authorized to exercise all powers of discretion granted him through any agency or agencies he may create or designate. Several later acts were passed making supplementary and additional appropriations and finally authorizing the sale or disposition of property thus acquired and of houses thus constructed. No question is made that ample funds were not appropriated and at all times available to provide compensation. Later, on June 18, 1918, the President designated by executive order the Secretary of Labor as an agency through whom purchases and requisitions of such property might be made.

On August 9, 1918, the defendant entered into a contract in writing with the United States Housing Corporation acting by authority of the President and the Secretary of Labor, for the sale and conveyance of the real estate now in dispute. The contract of purchase included a two-story building, but otherwise no property was included which might not be requisitioned without condemnation, pursuant to the provisions of the first act. The defendant agreed to convey a good marketable title, free and clear of all incumbrances, and including dower and homestead rights, and with the usual full covenants and warranties; also that he would furnish within five days an abstract of title showing a good marketable title thereto. This abstract was never furnished, and no deed was ever tendered.

On September 11, 1918, the defendant conveyed to his wife and to his son, Russell Stein, an interest in this property. He and his grantees have ever since refused to perform the original contract of sale. The United States Housing Corporation, immediately after the execution of the contract of sale, prepared plans for the improvement of the real estate by allotting, laying out, and grading the same, and constructing buildings thereon, and at some date shortly subsequent to the 11th of September, 1918, entered into the possession thereof and proceeded to make such improvements, and in fact constructed thereon some forty-eight houses. No contention is made that defendant's wife and son were purchasers for value without notice of the outstanding contract of sale.

Owing to defendant's refusal to perform his contract of sale, plaintiff, through the Secretary of Labor, resorted to the powers of requisition referred to in the acts above cited. The order of requisition was made March 20, 1919. It omitted that part of the land containing the dwelling house, which could not be acquired except upon condemnation. Notice of this requisition was served on the defendant and his wife in person March 28, 1919, and on his son by leaving a true copy thereof with the defendant, the same being alleged to be the son's usual place of abode. Notice of the requisition was also posted on the premises, and filed for record in the county in which the land is situated, March 29, 1919. No point was made at the hearing or is now made in argument respecting the technical regularity of the requisition proceedings. Later, compensation in the sum of $8,524.25 was fixed by the Secretary of Labor, and notice given defendant thereof, with further advices that, if dissatisfied with the amount, he might accept 75 per cent. without prejudice to his right to recover just compensation in the manner provided in said act. Later the defendant, his wife, and son, filed claims with the Secretary of Labor seeking a largely increased amount of compensation, which was denied, but have never resorted to the remedies provided in the act to recover additional compensation.

[1-3] Upon the foregoing state of fact, I am of opinion that plaintiff has title to the premises described in its bill, and that its right to the possession thereof is superior to the right of defendant or of his wife and son. The United States is undoubtedly the real party in interest and may maintain this action, notwithstanding the United States Housing Corporation, as a federal agency created for convenience in administering the law, might also have been a proper party plaintiff. Defendant's main proposition seems to be that the war had terminated before the property was requisitioned, and therefore the power to requisition had also been ended as a result of the provisions of section 5 of the original act. This proposition cannot be sustained. The war had not terminated at the time the property was requisitioned. See Hamilton v. Kentucky Distilleries & Warehouse Co., 251 U. S. 146, 40 S. Ct. 106, 64 L. Ed. 194. The holding of this case has been repeatedly reaffirmed in later cases by the Supreme Court and inferior federal courts.

No attack was made at the hearing or in defendant's brief upon the constitutionality of the War Housing Act of May 16, 1918. It is sufficient, therefore, to say that in my opinion it is well within the powers conferred by the Constitution upon Congress, and that none of its provisions violate any clause of the Constitution. It is well-settled law that, the use being public, the necessity for the requisitioning or condemning of property is not to be controlled by the courts, and that the judgment and discretion of the Legislature or of the other agencies, to which power is delegated to determine the necessity for taking any given property, cannot be controlled or reviewed by the courts. It is further settled law that, in requisitioning or condemning property for this kind of public use, it is not necessary that compensation should be paid in advance, but it is settled law that, if reasonable provision is made in the law whereby the property owner may be compensated, all legal requirements will be deemed to have been met and the rights of the property owner duly safeguarded. For

authorities, see U. S. v. Forbes (D. C.) 259 F. 585; In re Military Training Camp (D. C.) 260 F. 986; U. S. v. O'Neill (D. C.) 198 F. 677; Crozier v. Fried Krupp Aktiengesellschaft, 224 U. S. 306, 32 S. Ct. 488, 56 L. Ed. 771; Bragg v. Weaver, 251 U. S. 57, 40 S. Ct. 62, 64 L. Ed. 135.

A decree may be entered finding the issues in favor of plaintiff, quieting its title against defendant's adverse claim of title thereto and enjoining him from further trespass and interference as prayed.