**UNITED STATES v. CITY OF PHILADELPHIA et al.**

No. 3572.

District Court, E. D. Pennsylvania.

July 28, 1944.

Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., for the United States.

Samuel Feldman and Howard E. Stern, Asst. City Sols., and Ernest Lowengrund, Acting City Sol., all of Philadelphia, Pa., for defendants.

KALODNER, District Judge.

In this case, the United States seeks an injunction to prevent interference with the construction work on certain buildings by the City of Philadelphia and certain of its officers.

The sole issue for determination is whether the United States, in the construction of war housing under the Lanham Act 1940, 54 Stat. 1125, 42 U.S.C.A. § 1521 et seq., must comply with local building regulations.

On the basis of an agreed statement of facts, the pleadings and additional testimony, I state the following

### Findings of Fact

1. The Federal Public Housing Authority is an agency and instrumentality of the United States, created by Executive Order No. 9070, February 24, 1942, 50 U.S.C.A. Appendix, § 601 note, pursuant to which Order it administers the functions, powers and duties of the Federal Works Administration, under the Act of Congress of October 14, 1940, c. 862, 54 Stat. 1125, as amended, 42 U.S.C.A. § 1521, known as the "Lanham Act."

2. The Philadelphia Housing Authority is a body politic and corporate, created under the Housing Authorities Law of the Commonwealth of Pennsylvania of May 28, 1937, P.L. 955, 35 P.S. Pa. § 1541 et seq., and acts as agent of the United States of America, through the Federal Public Housing Authority, in the construction of housing projects under the provisions of the Lanham Act.

3. Pursuant to the provisions of the Lanham Act, the President of the United States, on November 20, 1940, and February 3, 1941, found that an acute shortage of housing which would impede the national defense activities existed or impended to the extent of 1,500 family dwelling units in Philadelphia, Pennsylvania, and that such housing would not be provided by private capital when needed.

4. Pursuant to such finding by the President of the United States, the Federal Works Administrator, during the year 1941, erected a housing project in the City of Philadelphia, consisting of 1,000 dwelling units, known as "Passyunk Homes," on land which had been condemned and title thereto taken by the United States of America, under proceedings in the United States District Court, for the Eastern District of Pennsylvania, on March 10, 1941, and April 7, 1941, being Civil Actions 1418 and 1461, respectively.

5. That the plants and specifications for the Passyunk Homes Housing Project, as originally prepared by the Architect, Edward H. Wigham, included provisions for the erection of a Community Building, Maintenance Building and Commercial Facilities (also referred to as "stores") Building, but that such buildings were not erected at the time the aforesaid 1,000 dwelling units comprising the Passyunk Homes Housing Project were erected.

6. On October 12, 1943, the Federal Public Housing Authority, acting through the Philadelphia Housing Authority, entered into a contract with George H. Evans & Co., of the City of Philadelphia, for the construction of Community, Maintenance and Commercial Facilities Buildings, on land belonging to the United States of America, being part of the aforesaid Passyunk Homes Housing Project.

7. On November 29, 1943, the said George H. Evans & Co. entered into a subcontract with the Diletto Co. for the installation of certain plumbing work in said buildings.

8. On October 20, 1943, Herbert M. Packer, Chief of the Division of Housing and Sanitation of the Department of Public Health of the City of Philadelphia, advised the Philadelphia Housing Authority, by letter, that it would be necessary for the Philadelphia Housing Authority to file plans and secure permits to construct the aforesaid buildings.

9. That the United States of America, acting through the Federal Public Housing Authority and the Philadelphia Housing Authority, proceeded with the construction work on the aforesaid buildings without filing plans and applying for permits as directed by the said Herbert M. Packer.

10. On December 28, 1943, Herbert M. Packer, Chief of the Division of Housing and Sanitation of the Department of Public Health, ordered the Diletto Co. to stop all plumbing work on said buildings until said plumbing contractor had complied, with the terms of the Act of Assembly of the Commonwealth of Pennsylvania, approved June 7, 1911, and its amendments, 53 P.S. Pa. § 4071 et seq., and the rules and regulations of Plumbing Supervision, adopted thereunder.

11. As a result of the aforesaid order of December 28, 1943, the plumbing contractor, Diletto Co., engaged by George H. Evans & Co. to do the plumbing work on the aforesaid buildings at Passyunk Homes, ceased work and has refused to proceed with said work.'

12. The plans and specifications for the aforesaid buildings at Passyunk Homes·do not comply with the requirements of the Plumbing Code for cities of the first class of the Commonwealth of Pennsylvania, as provided by the Act of Assembly of June 7, 1911, P.L. 680, amendments thereto, and the rules and regulations of the Board of Health and the Board of Plumbing Supervision, adopted pursuant to the provisions of said Act of Assembly.

13. The buildings which are the subject of dispute are not unsafe or unsanitary or otherwise unfit for human use by reason of the failure of the United States to construct them in accordance with the provisions of the pertinent codes and regulations set forth in Finding No. 12.

### Discussion

The instant case might properly be termed a companion case to United States v. City of Chester 3 Cir., 144 F.2d 415. The facts, and the issues in that case are substantially the same as those in the present case. The Circuit Court held the Lanham Act valid as being clearly within the war powers granted to Congress by the Constitution, and it determined that Congress by Section 1(b) of the Lanham Act, 42 U.S.C.A. § 1521(b), expressly authorized the Administrator to proceed to build emergency housing without regard to state or municipal ordinances, rules or regulations relating to plans and specifications or forms of contract. Indeed such provision was unnecessary except as a clear statement of the intent of Congress.

There is one principal difference between the City of Chester case and the instant case: In the former, the buildings are of a temporary character, while in this case, the buildings are permanent. The narrow question for determination here, therefore, is whether the fact that the buildings in question are permanent warrants a conclusion that such buildings must conform to the local regulations. I am of the opinion that it does not.

Section 1521(b) of the Act specifically provides for both "permanent" and "temporary" construction.

The Constitution invests in Congress the power to prepare for and to wage war successfully, and it is within the power of ·Congress to determine that which must be done to accomplish this purpose. If Congress determines that permanent houses are necessary, that is a proper exercise of its powers, and it is not for the court to say that temporary buildings are more desirable or that permanent buildings will not aid in prosecuting the war to a successful conclusion. The limitations on the exercise of the war powers, and the extent of Congress' discretion thereunder were carefully considered in Highland v. Russell Car & Snowplow Co., 1929, 279 U.S. 253, at page 261, 49 S.Ct. 314, at page 316, 73 L.Ed. 688, where the Supreme Court said:

"Under the Constitution and subject to the safeguards there set for the protection of life, liberty, and property (Ex parte Milligan, 4 Wall. 2, 121, 18 L.Ed. 281; Hamilton v. Kentucky Distilleries [& Warehouse] Co., 251 U.S. 146, 155, 40 S.Ct. 106, 64 L.Ed. 194; United States v. L. Cohen Grocery Co., 255 U.S. 81, 88, 41 S.Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045), the Congress and the President

exert the war power of the nation, and they have wide discretion as to the means to be employed successfully to carry on (Miller v. Robertson, 266 U.S. 243, 248, 45 S.Ct. 73, 69 L.Ed. 265; United States v. Chemical Foundation, 272 U.S. 1, 10, 47 S.Ct. 1, 71 L.Ed. 131). The measures here challenged are supported by a strong presumption of validity, and they may not be set aside unless clearly shown to be arbitrary and repugnant to the Constitution. Adkins v. Children's Hospital, supra, 261 U.S. [525], 544, 43 S.Ct. 394, 67 L.Ed. 785, 24 A.L.R. 1238."

Particularly appropriate is the statement of Judge Learned Hand, in Dryfoos v. Edwards, D.C.S.D.N.Y. 1919, 284 F. 596, at page 600, affirmed Ruppert v. Caffey, 251 U.S. 264, 40 S.Ct. 141, 64 L.Ed. 260:

"But most constitutional problems in the end resolve themselves into the question, How far? and there is no royal road to their solution by rhetorically conjuring up outrageous possibilities which may arise from their unflinching application. All I need do here is to say that until the declaration of peace Congress has power to deal with a matter directly arising from the prosecution of war, and so I hold."

It is obvious that the real objection of the City to the project lies in the fact that these buildings will remain after the emergency. In short, the contention is that granted the need, the means are more extended than the occasion requires. This objection is substantially answered above. There is no doubt that this matter arises directly from the prosecution of the war, but whether it is necessary to construct permanent buildings and whether the result is worth the sacrifice are matters not open for consideration by the court. Furthermore, it must be pointed out that the proposition is well-settled that the United States need not be at war in order for Congress and the President to exercise their war powers under the Constitution. Congress has provided in the Lanham Act for disposal by sale of buildings constructed pursuant to its terms, after the war. Title I, c. 862, Sec. 4, 54 Stat. 1127, 42 U.S.C.A. § 1524. But this section has been amended to provide for another means of disposal undoubtedly connected with war and preparation therefor that is, the transfer to the War and Navy Departments of such units as they desire. Title I, c. 14, Sec. 4, 56 Stat. 12, 42 U.S.C.A. § 1524. Congress may well find other such uses, and the possibility is not altogether unlikely.

Finally, the action of Congress is not altogether without precedent, for similar steps were found necessary during the last war. Act of May 16, 1918, c. 74, Sec. 1, 40 Stat. 550. That Act, which provided for temporary housing except "where the interests of the Government will be best served by the erection of buildings of a permanent character", did not differ greatly in substance from the Lanham Act, which provides for the construction of "permanent" buildings in areas where "the President shall find an acute shortage of housing exists or impends which would impede national-defense" except where it is determined that "there is no reasonable prospect of disposing of such housing to meet a need extending beyond the emergency." While there is no decision directly declaring the constitutionality of that Act, at least one court expressed an opinion of its validity. United States v. Stein, D.C.N.D. Ohio, 1921, 48 F.2d 626. There the court said, 48 F.2d at page 628:

"No attack was made at the hearing or in defendant's brief upon the constitutionality of the War Housing Act of May 16, 1918. It is sufficient, therefore, to say that in my opinion it is well within the powers conferred by the Constitution upon Congress, and that none of its provisions violate any clause of the Constitution."

Issues have been raised under that Act and decided by the courts without any question as to its constitutionality. United States v. Nitro Development Co., 4 Cir., 1926, 11 F.2d 75; Fletcher v. Maupin, 1942, 76 U.S.App.D.C. 63, 129 F.2d 46, 49; United States v. City of Philadelphia, D.C.E.D.Pa.1942, 48 F.Supp. 379.

Defendants have raised two other issues, (1) whether the Lanham Act contains an expression of Congressional intent to supersede the local and state regulations, and (2) the failure of the Administrator to consult with local officials and local housing authorities as provided in the Lanham Act, as amended January 21, 1942, c. 14, Sec. 7, 56 Stat. 12, 42 U.S.C.A. § 1545. The first of these questions is fully answered in United States v. City of Chester, 3 Cir., 144 F.2d 415. As to the second, the record reveals the de-

fendants brought forth no evidence to support such a contention.

Accordingly, I state the following

### Conclusions of Law

1. This Court has jurisdiction over the matter now before the Court, since the District Court has original jurisdiction where the United States is plaintiff.

2. The Federal Public Housing Authority and the Philadelphia Housing Authority, in the construction of Passyunk Homes, under the provisions of the Lanham Act, are agents and instrumentalities of the United States of America, engaged in carrying out a governmental function as a sovereign power and are not subject to any state or municipal building regulations enacted by the Commonwealth of Pennsylvania or the City of Philadelphia.

The motion for injunction must be granted.

An Order may be submitted in accordance with this opinion.