## GUION v. UNITED STATES.
### No. 47283.

Court of Claims.
Feb. 3, 1947.

Samuel M. Coombs, Jr., of Jersey City, N. J. (Carpenter, Gilmour & Dwyer, of Jersey City, N. J., on the brief), for plaintiff.

Gaines V. Palmes, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and MADDEN, JONES, WHITAKER, and LITTLETON, Judges.

JONES, Judge.

This suit arises out of a construction contract. The immediate issue is a demurrer by defendant to certain items of damage claimed. The material allegations of the

petition and attached exhibits are as follows:

P. Sanford Ross, Inc., on May 20, 1941, contracted with the War Department to do specified dredging in Great Kills Harbor, Staten Island, New York.

The corporation, on March 11, 1942, filed a voluntary petition in bankruptcy, and Harry P. Guion was appointed Trustee and was directed by the United States District Court to institute suit in this court for the recovery of the balance claimed and other damages alleged.

Articles 3 and 4 of the contract having to do with changes and changed conditions were in the usual standard form. The specifications as to claims, protests, and appeals were also in the usual form. These are set out in the exhibit to plaintiff's petition.

Paragraph 4–01 of the specifications is as follows:

"*Character of materials.*—(a) Probings and borings made by the United States to determine the depth of soft material are shown on the maps referred to in paragraph 1–03. It is believed that the material to be removed is mud, sand, and some clay overlying hard sand and gravel. Material encountered during the original dredging of the outer part of the Entrance Channel consisted mostly of sand and gravel with some clay and mud.

"(b) The United States does not guarantee that other materials will not be encountered nor that the proportions of the several materials will not vary from those indicated by the explorations. Bidders are expected to examine the site of the work, and after investigation, decide for themselves the character of the materials and make their bids accordingly. In the execution of the work prescribed in paragraph 1–02, all materials of the character developed by the explorations, in whatever proportions they may be encountered, or as otherwise above described, and all other materials, which, in the opinion of the contracting officer, can be removed and disposed of with substantially equal facility by the plant stated in the accepted bid, shall be removed and disposed of by the contractor at the contract unit price. (See paragraph 4–06.)

"(c) If materials, structures, or obstacles of a substantially different character are encountered in the execution of the prescribed work and the cost of their removal or satisfactory treatment obviously would be, in the opinion of the contracting officer, either in excess of, or less than the contract price, the contracting officer, in either alternative, will then proceed in accordance with the provisions of article 4 of the contract."

The Chief of Engineers was designated by the Secretary of War as his duly authorized representative to make decisions. The corporation commenced work August 11, 1941, with its hydraulic dredging plant, which had been inspected by the contracting officer and approved as suitable for the work to be performed. At the end of five weeks the corporation was far ahead of the schedule set for the completion date of the contract.

At the end of that time the corporation ran into an entirely different kind of material from that set out in the specifications, including boulders, rock and hard pan, which placed a severe strain upon the dredging plant and equipment. Cutter blades were worn down. Bevel gear and pinion, including the cutter or agitator, were continuously broken down, gear teeth were broken off, and the pipe through which the material was pumped was badly damaged and the machinery otherwise injured.

Oral complaints were immediately made and about December 23, 1941, after completing the sections which contained soft material, the corporation asked for a change order on the ground that an entirely different kind of material than that specified in the contract had been encountered, attention being called to the fact that while immediate orders had been placed for repairs and replacements, the corporation's work was not given a high enough rating in the priorities system then prevailing to enable it to secure essential parts and replacements.

On January 9, 1942, the United States granted Change Order No. 1 on the ground that material had been encountered substantially different from that named in the specifications. The contract was modified

by the defendant to make payments in addition to the contract unit price as follows:

"(a) A sum equal to the reduction in earnings at the rate of the difference between the average hourly earnings during the period of operations under normal conditions and the average hourly earnings during the period when changed conditions were encountered.

"(b) A sum equal to the reduction in earnings due to excessive time lost in the removal of stones and boulders from the dredge suction, pump or discharge pipe line, at the rate of the average earnings per hour under normal conditions."

This change order was approved by the Chief of Engineers on January 26, 1942.

Change Order No. 2, dated January 28, 1942, granted an extension of time for completion of the work. The corporation accepted Change Order No. 1 under protest.

The corporation endeavored to complete its contract but because of the material it encountered finally suffered a complete breakdown, and alleges that the parts necessary for the immediate repair of its equipment could not be secured because of Government restrictions and lack of sufficient and adequate priorities to obtain them. It is further alleged that because the defendant held up the payment due under the contract, as modified by the change orders, the corporation was compelled to file its voluntary petition in bankruptcy on March 11, 1942, and to abandon further work on the contract.

Plaintiff asserts that the reasonable value of the dredging of 116,348 cubic yards of boulders, rock, and hard pan which it removed was $76,926.60, and that the damage to the dredge caused by such material was $7,740.

The receiver on May 4, 1942, demanded immediate payment of $13,631.27 which he claimed was then due under the change orders. The defendant refused payment.

Paragraphs 19 and 20 of plaintiff's petition are as follows:

"19. Plaintiff alleges that on the 15th day of May, 1945, he was directed by the United States District Court for the District of New Jersey to institute suit against the United States for the recovery of $13,-631.27, and other damages alleged by him, in this Court. A true copy of the said Order is annexed hereto and made a part hereof and marked Exhibit 'G.'

"20. Plaintiff alleges that as such Trustee he is entitled to recover from the United States damages as follows:

| | |
|---|---:|
| Balance due on contract as modified by Change Orders | $13,631.27 |
| Reasonable value for dredging boulders and large rocks not covered by the Invitation to Bid, Contract or Specifications, 39,000 cubic yards at $1.08 per cubic yard | 42,120.00 |
| 77,348 cubic yards of rock and hard pan at 45¢ per cubic yard | 34,806.60 |
| Costs of repairs to dredge and equipment caused by dredging boulders, rock, and hard pan not covered by Invitation to Bid, Contract or Specifications | 7,740.00 |
| Total | 98,297.87 |

together with interest on said total sum of $98,297.87.

The defendant demurs to the second, third, and fourth items in this list of claims on the ground that as to such claims the petition does not allege facts sufficient to constitute a cause of action.

Defendant in its brief calls attention to article 15 of the contract which stipulates that all disputes concerning questions of fact arising under the contract should be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned, or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. It calls attention to the fact that plaintiff nowhere alleges the decision of January 9, 1942, was appealed within 30 days or at any other time. There is no doubt that in ordinary circumstances such appeals are required. United States v. Callahan Walker Construction Co., 317 U.S. 56, 63 S.Ct. 113, 87 L.Ed.

49; United States v. Joseph A. Holpuch Co., 66 S.Ct. 1000.

■ The corporation in answer alleges that it became unnecessary to appeal since it was advised by the engineer in charge of the Engineers Office that there was no probability of increasing the amount per cubic yard specified in the contract, and that if the contract was not completed in accordance with its terms as modified by the change orders, the corporation would be held responsible and liquidated damages would be assessed. It is not necessary to pass upon the question of whether these facts as alleged are sufficient to excuse the corporation from the necessity of appealing the decision, because the change order of January 26, 1942, was approved by the Chief of Engineers who was the authorized representative of the Secretary of War. Thus if it be conceded that the alleged facts are sufficient to excuse the corporation, then in order to escape the decision of the Chief of Engineers it would be necessary to allege that this action was so arbitrary as to imply bad faith. No such allegation is found in the petition. United States v. Gleason, 175 U.S. 588, 602, 20 S.Ct. 228, 44 L.Ed. 284; R. H. Crowley v. United States, 62 F.Supp. 887, 105 Ct.Cl. 97, 115. Whichever horn of the dilemma is taken, the allegations are insufficient as to the items against which the demurrer is leveled.

■ The allegation that the corporation was unable to secure repairs and replacements for its dredge and equipment due to the priorities system then in effect is insufficient. While essential war priorities are sometimes harsh and burdensome, they are a necessary part of war activities and it has been repeatedly held that no recovery can be had because of the hardships and difficulties entailed by them. Gothwaite v. United States, 102 Ct.Cl. 400; J. F. Bar-

bour & Sons v. United States, 63 F.Supp. 349, 104 Ct.Cl. 360.

■ The demurrer does not cover the question of any balance that may be due the corporation for work performed under the contract. This part of the claim is set out in item 1. Also a serious question is raised in the pleadings as to whether the contracting officer was justified in ordering the corporation back to work on the section which involved boulders, rock, and hard pan under the threat of holding it responsible and suing its sureties if it declined to further proceed. The contracting officer and the officials of the Government had the same information about the priorities system as did the corporation, and while the plaintiff cannot recover for any hardship due to the priorities system, we are not inclined to hold, without going further into the facts, that in the light of the priorities system and the impossibility of securing repairs and replacements and additional equipment for this type of work the corporation might not be entitled to recover the damages which it sustained by virtue of being ordered to proceed with the work, notwithstanding the acknowledged unfitness of its equipment for the type of work required in removing boulders, rock, and hard pan.

The demurrer will be sustained and the petition dismissed as to the second and third items, and will be overruled without prejudice as to the fourth item set out in paragraph 20 of plaintiff's petition.

It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges, concur.

WHALEY, Chief Justice, took no part in the decision of this case.