## ROSS ELECTRIC CONST. CO., Inc. v. UNITED STATES.

### No. 46846.

Court of Claims.

June 1, 1948.

P.J.J. Nicolaides, of Washington, D.C. (William F. Kelly, of Washington, D.C., on the brief), for plaintiff.

Kendall M. Barnes, of New York City, and H.G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges.

JONES, Chief Justice.

On September 30, 1943, the plaintiff, for a consideration of $25,000, agreed to install runway lighting at Mustin Field, Philadelphia. The contract called for complete lighting installations for three runways, control equipment, ducts under and across the runways, and the relocation and connection of any conduits and cables and trenchways for underground cables.

The defendant was to supply all major items of material and equipment, but the plaintiff was to furnish the concrete for four manholes that were to be constructed.

Notice to proceed was received by plaintiff on September 30, 1943, the same day the contract was signed, and the work was to be completed December 29, 1943, failing which liquidated damages at the rate of $20 a day were to be assessed.

The contract was completed May 26, 1944, a delay of 149 days.

Thirty days of this delay were due to certain underground obstructions unknown to either party at the time the contract was signed. Plaintiff submitted a claim for an increased price for this extra work and was paid therefor under Change Order E and was given an extension of thirty days.

Six other change orders were issued, five of which, identified by letters A,B,C,D, and G, were accepted without protest, and the plaintiff was paid an additional total of $6,468.28 for such changes.

Plaintiff sues for damages and extra expense alleged to have been caused by the additional 119 days' delay which it asserts were the result of the failure of defendant to promptly furnish the materials as needed.

The defendant admits that the major portion—75 days—of such delay was due to the slowness in furnishing materials, but pleads that such delay in delivery was the direct result of the priorities system and is therefore noncompensable.

The materials to be furnished were made principally of steel, copper, and aluminum, as to all of which there was a critical shortage during the war.

The specifications on which the bids were based contained the following note at the beginning:

"The Bureau of Yards and Docks will assign a Preference Rating of ...... to the contract. Information concerning the administration of the Priorities System may be had upon application to the Priorities and Allocation Division, Bureau of Yards and Docks, Navy Department, Washington, D.C. (Telephone Republic 7400, extension 5181.)"

Some airports were deemed more essential than others. In the spring of 1943 a priority list for airport lighting was issued. Among forty airports on such list, Mustin Field was listed as No. 25.

There was considerable delay in furnishing material. After some conferences and correspondence, plaintiff wrote a letter dated August 18, 1944, setting out various delays and asking for an extension of 117 days.

The contracting officer found that delay on the part of the Government had extended the time of completion of the work

119 days and on September 16, 1944, issued Change Order F as follows:

"The Contracting Officer finds that owing to an unforeseeable cause beyond the control and without the fault or negligence of the Contractor, namely, delay on the part of the Government in furnishing necessary materials, the last of which was delivered on 10 May 1944, the completion of the work under Contract NOy–6724 was delayed 119 days.

"Accordingly, pursuant to Article 11 of the contract, the contract time for completion is hereby extended 119 calendar days, to and including 26 May 1944, without change in contract price.

"You are requested to indicate your acceptance of this change in the space provided therefor on the original and three copies herewith, returning the original and two copies to this office."

On September 25, 1944, plaintiff wrote a letter in which it accepted Change Order F, but reserved the right to claim reimbursement for the damages caused by the various delays. The plaintiff's increased cost resulting from the delay of 119 days amounted to $6,619.25.

Is the plaintiff entitled to recover the damages caused by these delays?

We think not.

The delay for which plaintiff sues was due to the operation of the priorities system.

On December 26, 1942, the War Production Board issued and filed in the Federal Register Order L–235, a part of which dealt with the shortage in supply of aluminum, copper, iron and steel, and which placed a general limitation on their manufacture and authorized a channeling of the supply of the products made therefrom. The Army, Navy and Civil Aeronautics Administration which were the principal procuring agencies of airport lighting equipment, placed the purchasing of all such equipment in the hands of the Army Air Forces.

In so far as the record shows, these allocations were made in accord with the established priority system on the basis of wartime essentiality. Order L–235 forbade the manufacture as well as the sale of airport equipment, notwithstanding any contract or agreement to the contrary, except in the manner set out in the order.

The defendant is not liable for the delay in delivery due to the proper operation of the priority system. Froemming Bros., Inc., of Texas v. United States, 70 F.Supp. 126, 108 C.Cl. 193; Gothwaite v. United States, 102 C.Cl. 400; Barbour & Sons v. United States, 63 F.Supp. 348, 349, 104 C.Cl. 360.

If there were any evidence of willful or careless delays on the part of the Government a different question might be presented, but while plaintiff in a letter complained of the lack of "cooperation and just downright lack of consideration of the contractor," there is no specific evidence to support such an assertion.

Also, if there had been evidence that defendant knew there would be delays growing out of the operation of the system and plaintiff did not know, and the defendant nevertheless gave plaintiff notice to proceed without disclosing such information and had thus put plaintiff to needless expense, a basis for a claim might be found. But here the priority orders were made a public record and there is no evidence that defendant failed to furnish all the information it possessed, and no evidence that it deviated in any way from the regular operations of the priority system. In these circumstances there is no liability on the part of the defendant.

To hold otherwise would be to hold the defendant liable for all the hardships that grew out of contracts connected with a war that was not of its own choosing.

There is no doubt that plaintiff incurred extra costs on account of these delays and but for the control of the manufacture and distribution of critical materials made necessary by wartime needs it would be entitled to recover. These controls were essential and the delays necessarily caused thereby were not the fault of either the plaintiff or the defendant.

There were some minor delays caused by breakdown of machinery, weather conditions, and scarcity of common labor, but

these ran concurrently and apparently did not increase the total delay.

The petition is dismissed.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.