GEORGE H. EVANS & CO. v. UNITED STATES et al.

No. 9559.

Circuit Court of Appeals
Third Circuit.

Argued March 16, 1948.
Decided Aug. 3, 1948.

Edward J. Mingey, of Philadelphia, Pa., for appellant.

Walter A. Gay, Jr., of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., on the brief), for appellees.

Before BIGGS, O'CONNELL, and KALODNER, Circuit Judges.

O'CONNELL, Circuit Judge.

The facts which gave rise to the instant complaint are set forth in United States v. City of Philadelphia, D.C.E.D.Pa.1944 56 F.Supp. 862, affirmed by this court at 3 Cir., 1945, 147 F.2d 291. In brief, plaintiff contracted with the Philadelphia Housing Authority, a public body corporate acting as Contracting Officer for the Federal Public Housing Authority,[1] to construct several buildings as part of the "Passyunk Homes" project. Eight days later, the Department of Health of the City of Philadelphia advised the Philadelphia Housing Authority by letter that the Philadelphia Housing Authority would have to file plans and secure permits for the construction of the buildings.

About six weeks thereafter, plaintiff entered into a sub-contract with the Diletto Company for the performance of certain plumbing work in the buildings which plaintiff had contracted to erect. One month subsequently, the Department of Public Health of the City of Philadelphia ordered the Diletto Company to stop all plumbing work until compliance was had with the terms of Plumbing Supervision, adopted under the authority of the Act of Assembly of the Commonwealth of Pennsylvania, approved June 7, 1911, 53 P.S.Pa. § 4071 et seq. The United States, acting through its agents, thereupon (a) ordered plaintiff to stop performance of the plumbing work until the agents could effect a settlement with the City of Philadelphia; (b) further directed plaintiff to proceed

[1] The status of the Federal Public Housing Authority and the Philadelphia Housing Authority is described succinctly in United States v. City of Philadelphia, D.C.E.D.Pa.1944, 56 F.Supp. 862, 863, as follows:

"1. The Federal Public Housing Authority is an agency and instrumentality of the United States, created by Executive Order No. 9070, February 24, 1942, 50 U.S.C.A.Appendix, § 601 note, pursuant to which Order it administers the functions, powers and duties of the Federal Works Administration, under the Act of Congress of October 14, 1940, c. 862, 54 Stat. 1125, as amended, 42 U.S. C.A. § 1521, known as the 'Lanham Act.'

"2. The Philadelphia Housing Authority is a body politic and corporate, created under the Housing Authorities Law of the Commonwealth of Pennsylvania of May 28, 1937, P.L. 955, 35 P.S.Pa. § 1541 et seq., and acts as agent of the United States of America, through the Federal Public Housing Authority, in the construction of housing projects under the provisions of the Lanham Act."

The authority of the Philadelphia Housing Authority to act in this matter is not in issue. See 42 U.S.C.A. § 1545 and 35 P.S.Pa. 1550(g).

502

with the rest of the work involved in the construction of the buildings; and (c) sought and eventually obtained a preliminary injunction restraining the City of Philadelphia from interfering with the construction.

Plaintiff did proceed, under protest, with the construction other than the plumbing. Plaintiff alleges that the course thereby prescribed was "abnormal, unusual and unworkmanlike," and caused a delay of 213 days in the construction, with a consequent increase of expense in the sum of $10,860.-12. The instant complaint, which appends the contract as an exhibit thereof, seeks payment of this additional expense allegedly incurred.

In the court below, defendant moved to dismiss the complaint, on the grounds that "the party defendant in this action is the United States of America and plaintiff claims a sum in excess of any claim which may be litigated in this Court," and also because the complaint "fails to state a claim against defendant upon which relief can be granted." The district judge, while indicating that there was neither a misjoinder of parties nor a claim beyond the jurisdictional limit of the court, nevertheless dismissed the complaint on the theory that an action for breach of contract could not be spelled out of compelling plaintiff to proceed with the other construction while the plumbing litigation was pending.

■ Ferguson v. Union Nat. Bank of Clarksburg, W.Va., 4 Cir., 1942, 126 F.2d 753, which involves a suit against the Federal Housing Administrator, specifically holds that "the jurisdiction of a United States District Court to entertain a suit against governmental agencies and corporations is not limited by the provisions of the Tucker Act, 28 U.S.C.A. §§ 41(20), 250 et seq." 126 F.2d at pages 756-757. While it is true that the defendant in the Union National Bank case was the Administrator, whereas the agencies themselves are two of the defendants in the case at bar, it is clear that, in cases like that before us, the power to sue and be sued properly includes the agency as well. See Keifer & Keifer v. R. F. C., 1939, 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784, and F. H. A. v. Burr, 1940, 309 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724.[2] On the strength of these cases, we agree with the court below that, as to the agency defendants, plaintiff was not dependent upon the Tucker Act, 28 U.S.C.A. § 41(20), as the basis of jurisdiction, and that consequently the $10,000 limitation of the Tucker Act is here inapplicable.

■ As to the United States as a party defendant, the cases cited above reiterate the principle that the federal government may not be sued without its consent. Such consent cannot be deemed to be here extended by the Tucker Act, since the complaint seeks a sum in excess of the $10,000 limitation imposed by that Act. Therefore,

[2] Congress at one time or another provided for three housing bodies, the similarity of whose names can create confusion:

(a) The Federal Housing Administration, created by the National Housing Act of 1934, 12 U.S.C.A. § 1701 et seq., operated principally in the field of housing insurance. This was the agency involved in the Burr and Union National Bank cases. The complaint of plaintiff erroneously cites this statute as that under which the case at bar arises.

(b) The United States Housing Authority, created by the United States Housing Act of 1937, 42 U.S.C.A. § 1401 et seq., was established to furnish low-rent housing.

(c) The Act of October 14, 1940 ("Lanham Act"), 42 U.S.C.A. § 1521 et seq., aimed to supply defense housing.

These three agencies, along with others, were consolidated into the National Housing Agency by Executive Order No. 9070, 50 U.S.C.A.Appendix, § 601 note. The National Housing Administrator, head of this new organization, was granted the powers of the heads of the consolidated agencies. Prior to this time, the Federal Housing Administrator could "sue and be sued in any court of competent jurisdiction," 12 U.S.C.A. § 1702; the United States Housing Authority was to "sue and be sued in its own name," 42 U.S.C.A. § 1405(b); and the Federal Works Administrator "with respect to any property acquired or constructed under the provisions of subchapters II-IV," was authorized "to deal with, maintain, operate, administer, and insure" and also "to pursue to final collection by way of compromise or otherwise, all claims arising therefrom." 42 U.S.C.A. § 1544.

the motion to dismiss on the ground of lack of jurisdiction, as to the United States, should have been granted.

■ It is urged that the United States, and not the agency defendants, is really the defendant in the case before us. With this contention we cannot agree. While the complaint might have been more artistically drawn in this respect, we believe it does fairly set forth that it was the allegedly improper orders of the agency defendants which caused plaintiff to incur such additional expense as plaintiff here seeks to recover. To accord sovereign immunity to the acts of the agents would be to induce the very result which was rejected in F. H. A. v. Burr, supra.

■ It therefore becomes incumbent upon us to examine the contract in question to determine whether it justified the action of the agency defendants in compelling plaintiff to proceed with construction other than the plumbing. Like the court below, we agree with plaintiff that a "constructive condition of cooperation" may appropriately be implied in construction contracts, where consistent with the terms of such contracts. If, however, a contract on its face discloses a legal provision which specifically contemplates the situation which did arise; and if the provision sets out the responsibility of each of the contracting parties in that eventuality, there can be no inference to the contrary. The contract here involved, which is a standard form of government contract, contains the following Article:

10(b) *"The Contractor is cautioned that when it is his responsibility to make connections to the city or other utility lines or services he shall ascertain whether or not the work, as shown on the drawings or specified, varies from the requirements of the city or utility company to the extent that permission to connect with their lines or services is or may be refused.* If such permission is or may be refused, the Con-

tractor shall immediately notify the Contracting Officer to that effect, *and shall not proceed further with the part of the work affected until instructed to do so by the Contracting Officer.* In the event that changes in the drawings or specifications are necessary to meet the situation, the Contract price will be adjusted, as provided in Article 3 above." (Emphasis supplied.)

Let us examine this Article in the light of the surrounding circumstances. The government was attempting rapid construction to meet a highly critical need which threatened the success of the war effort. Compliance with the myriad of local rules governing construction would have meant serious delay; hence Congress authorized the Federal Works Administrator to perform his duties "without regard to * * * Federal, State, or municipal laws." 42 U.S.C.A. § 1521. Practical considerations prevented the Administrator from entertaining any hope so sanguine as to expect no show of resistance from the municipalities wishing to enforce their ordinances. In fact, the City of Chester, Pennsylvania, showed its intent to enforce its local regulations almost five months before plaintiff entered into the contract here in question. See United States v. City of Chester, 3 Cir., 1944, 144 F.2d 415, 417.

■ With this background of experience, the agencies cautioned plaintiff that, if the requirements of the City of Philadelphia varied from those set forth in the contract,[3] opposition from the city authorities was possible; that permission to connect lines and services might be refused; that delay in completing that part of the work might ensue; and that the contract price would be adjusted only in the event that changes in the drawings or specifications were necessary to meet the situation. It was incumbent upon plaintiff to consider this condition just as it calculated all other factors of cost before entering into the contract.

[3] In United States v. City of Philadelphia, D.C.E.D.Pa.1944, 56 F.Supp. 862, the forerunner of the instant case, the district judge made the following finding of fact:

"12. The plans and specifications for the aforesaid buildings at Passyunk Homes do not comply with the requirements of the Plumbing Code for cities of the first class of the Commonwealth of Pennsylvania * * * and the rules and regulations of the Board of Health and the Board of Plumbing Supervision * * *."

504

In the course of events, the city did refuse permission, and plaintiff did receive instructions to proceed on all work save that portion in controversy. Although the agencies had not so committed themselves in the contract, they successfully sought an injunction preventing the city from imposing its plumbing requirements upon the contractor. Consequently, we have no basis for inferring (nor does plaintiff allege) that changes in drawings or specifications, the lone basis for adjustment of the contract price which this Article affords, were necessitated.

█ Assuming, as we must on a motion to dismiss, that plaintiff incurred expenses beyond those which plaintiff had expected, because of the objections of the city to the plumbing specifications, we nevertheless hold that Article 10(b) of the contract bars recovery of any additional sum on that ground. Warned in advance of an element which might lead to increased costs, plaintiff cannot obtain legal relief because the possibility did materialize. Cf. Ross Electric Const. Co. v. United States, Ct.Cl., 1948, 77 F.Supp. 749, 750 and Comp.Gen. Dec. B-73813, dated June 22, 1948, 17 L.W. 2015-2016. Under the circumstances, we are impelled to the conclusion that Article 10(b) of the contract, which has been pleaded as part of the complaint, affirmatively eliminates the cause of action which plaintiff here asserts.

The judgment of the court below, dismissing the complaint, must accordingly be affirmed.