JoNes, Chief Judge,
delivered the opinion of the court:
This suit involves a claim for damages for alleged delay-in furnishing materials to be used in a construction contract..
The plaintiffs on June 2,1942, entered into a contract with the defendant to construct temporary buildings and facilities at the Air Corps Flexible Gunnery School about eight, miles northeast of Las Vegas, Nevada. The work was to be-completecTwithin 100 days after receipt of notice to proceed,, which was received June 5, 1942, the completion date thus-, being fixed as September 13, 1942. A number of items were-added to and some taken from the contract by change orders- and modifications, and the time for completion of the work. *135 was extended. The contract was completed within the time as extended on March 3,1943.
The contract was let upon open bidding in response to a circular letter issued by the Chief of Engineers at Washington, D. C., under date of May 11, 1942, which required the District Engineer, prior to the award of a contract, to requisition approximately 75 percent of the estimated lumber requirements.
On May 11, 1942, about three weeks before the execution of the contract, the allocation system for materials was put into effect, and this was one of the early contracts under that system.
On May 26,1942, by addendum No. 4 the original specifications under the proposed contract were amended by the revision of three subparagraphs. These subparagraphs as revised stipulated that the Government would designate the source or sources of, and allocate to the contractor materials and equipment in sufficient quantities to construct the building, utilities, and appurtenances set forth in the contract. They set out the items and total cost, provided that the contractor should keep an accurate record of the cost of material and freight charges to the nearest railhead, and specified that an equitable adjustment covering an increase or decrease in tire amount set out should be made after the completion of the delivery of the allocated materials and equipment. They contained a provision to the effect that if there were delays in the delivery of materials and supplies because of war priorities and without the fault or negligence of the contractor the time of performance would be extended for a period equal to such delays. The revised proposal also contained the following provision:
(c) The Government will allocate to the contractor all of the lumber required to construct all buildings, equipment, and appurtenances set forth in the contract or in any addition or additions thereto. Approximately seventy-five percent (75%) of the lumber to be allocated has been requisitioned and copies of the requisition are on file in the office of the District Engineer, 751 South Figueroa Street, Los Angeles, California. The contractor shall submit to the Contracting Officer requisitions covering the balance of the lumber to be allocated by the United States, and these requisitions must be submitted for nonstructural grades at least twenty-five (25) cale *136 ndar days prior to date initial delivery of lumber is desired, and for structural grades at least forty-five (45.) calendar days prior to date initial delivery is desired.
The quoted provisions constitute the basis of plaintiffs’ claim for damages.
It developed that the statement in the proposed contract that the defendant had requisitioned approximately 75 percent of the lumber required for the contract was an error. No part of it had been requisitioned. The Chief of Engineers had simply instructed the Area Engineer to arrange for the purchase of the lumber and had given notice to certain lumber companies of the amount of lumber that would be required.
The defendant takes the position that it had only agreed to make allocations of the materials and that under the- allocation and priority system then prevailing it would not be responsible for any damages caused by the delays and shortages incident to such a system in the wartime period.
There is no question that this position is correct in so far as one-fourth of the lumber and materials is concerned, which one-fourth was to be thereafter allocated — that is, after the time of the execution of the contract. This position is in accord with a number of decisions by this court. Harry P. Guion, Trustee, v. United States, 108 C. Cls. 186, 192; Froemming Brothers, Inc., v. United States, 108 C. Cls. 193; Gothwaite v. United States, 102 C. Cls. 400; J. F. Barbour Sons v. United States, 104 C. Cls. 360; Pearson, Dickerson, et al., v. United States, 115 C. Cls. 236; Ross Electric Construction Company, Inc., v. United States, 111 C. Cls. 644, 663.
If there had been only an agreement to allocate the necessary lumber, the priority provisions, whether set out in the contract or not, would have prevented recovery for damages due to shortages incident to the operation of wartime priorities.
But this is not true as to the three-fourths of the material which defendant represented to the plaintiffs had already been requisitioned. The defendant wrote into the contract just a short time before it was executed a specific provision which contained the following language:
*137 * * * Approximately seventy-five percent (75%) of the lumber to be allocated has been requisitioned * * *.
It is difficult to escape the conclusion that the use of such language was calculated to cause the bidder to believe that the Government had that amount of lumber spotted and available. This is especially true when that sentence immediately follows one to the effect that the Government would allocate to the contractor all of the lumber required! to construct all buildings, equipment, and appurtenances, under the contract. The defendant contends that its only obligation was to allocate, but it used the term requisition.. As was said by Justice Holmes in the case of Towne v. Eisner, 245 U. S. 418, 425.
A word is not a crystal, transparent and unchanged, it is the skin of a living thought and it may vary greatly in color and content according to the circumstances and the time in which it is used.
When the two sentences in the Government contract were laid alongside each other it was natural that plaintiffs should rely upon this representation. Ray A. Myers, who was the head of plaintiffs’ firm, testified that plaintiffs did rely upon this representation. We quote from his testimony as follows r
Q. I would like to ask you whether or not in submitting your bid on this job in the amount of $1,925,324 you did or did not rely upon the fact that the Government represented in Addendum No. 4 that seventy-five percent of the lumber had already been requisitioned.
A. Yes. You certainly would use that information as part of the bid data in getting your bid together.
The representation was not correct. No part of the lumber had been requisitioned. For this reason we think plaintiffs are entitled to recover. It is difficult, however, to find a correct measuring rod for the amount of the damages thus-caused. Some of the lumber that was furnished was not of the proper dimensions Plaintiffs were authorized to supply missing dimensions by ripping or laminating surplus, dimensions on hand.
Plaintiffs filed a claim for damages growing out of the-delays in furnishing materials in the amount of $65,722.21, which was later amended, increasing the amount of the claim *138 to $66,090.25. This included an item of $3,928 for ripping and laminating which was allowed and paid. After some discussion with the contracting officer that officer determined that the contractor was equitably and reasonably entitled to an additional amount of $57,487.03, and prepared a supplemental contract providing for the payment of such amount to plaintiifs. This supplemental contract was subject to the approval of the Chief of Engineers, who disapproved it for the reasons set out in Finding 20.
The contracting officer thereupon prepared findings of fact in which he reiterated that $57,487.03 was a fair, reasonable, and equitable amount due the contractor for increased costs due to delays incurred, but that “in view of the provisions of the contract, and the disallowance of the claim under the First War Powers Act, the claim is denied for the reason that there is no legal method for payment of same by this office.” Plaintiffs appealed to the Board of Contract Appeals which held that it was without authority to determine the Government’s liability for damages, and for that reason dismissed the appeal.
We find that the greater portion of the claim is not satisfactorily proved. While no doubt the actual damages were much more than we are allowing, the evidence is not of such a nature as to be the proper basis for such a judgment. However, the increased cost of labor due to the transferring of men from one job to another and the consequent interruptions is definitely proved by disinterested witnesses who had had long experience in this type of work. The lowest calculation that any of them gives as to the added costs thus occasioned is $24,828.84. This includes ten percent payroll insurance.
In view of the fact that one-fourth of such added cost must be eliminated due to the fact that only seventy-five percent of the amount of lumber was covered by the representation, we must reduce this amount by one-fourth, which leaves a balance of $18,621.63. *
The plaintiffs are entitled to recover the sum of $18,621.63. It is so ordered.
Howeel, Judge; MaddeN, Judge/ Whitakee, Judge/ and LittletoN, Judge, concur.